PROPRIETORS OF SWAN POINT CEMETERY *vs.* BENJAMIN
TRIPP, City Treasurer of the City of Providence.

The charter of a cemetery corporation provided that " the real estate held by this corporation
at their cemetery, for cemetery purposes, shall not exceed two hundred acres of land ; and
all the property of this corporation . . . . shall be forever exempt from all taxes and as-
sessments." . . . The charter also gave to the corporation " all the powers and privileges
granted in and by chapter one hundred and twenty five of the Revised Statutes," among
which was the power of " taking, holding, transmitting, and conveying property, real or
personal."

The corporation, in addition to its cemetery lands proper, had acquired title to some old
burial grounds in the city of Providence, which it had been clearing up by the removal of
graves and the acquisition of burial rights in order to sell the grounds and increase its
funds. These grounds had been assessed for a sewer by the city of Providence. The cor-
poration paid the assessment under protest and brought suit for its reimbursement.

*Held*, that the corporation owned the old burial grounds for purposes auxiliary to its cor-
porate ends, and, therefore, rightfully.

*Held*, further, that the entire property of the corporation was free from taxation.

*Held*, further, that sewer assessments, although they did not exist when the charter was
granted, were akin to street assessments, which did exist.

*Held*, further, that the corporate realty was exempt from sewer assessments as well as from
other assessments.

*Held*, further, that the plaintiff should recover.

ASSUMPSIT.   Heard by the court, jury trial being waived.

This case was submitted on the following statement of facts
agreed to by the attorneys of the litigants.

" The city of Providence having assessed lands of the plaintiff
corporation for sewers, levied such assessments on the lands, and
the plaintiff, to prevent their sale and the cloud upon the title,
paid the assessments under protest, as appears by the written pro-
tests filed with the city treasurer at the time of the payment,
copies of which are annexed, . . . and the plaintiff afterwards,
and more than forty days before suit, presented its claim to the
city council[1] for repayment, and the council refused to pay the

---

[1] In accordance with Pub. Stat. R. I. cap. 34, § 12, as follows :

" Every person who shall have any money due him from any town, or any
claim or demand against any town for any matter, cause, or thing whatsoever,
shall take the following method to obtain the same, to wit : Such person shall
present to the town council of the town, and to the city council of the city, a
particular account of his claim, debt, damages, or demand, and how incurred or
contracted ; which being done, in case just and due satisfaction is not made him
by the town treasurer of such town within forty days after the presentment of
such claim, debt, damages, or demand aforesaid, such person may commence
his action against the town treasurer for the recovery of the same."

same, but gave the plaintiff leave to withdraw as appears by the copy of such claim and action thereon hereto annexed. . . .

" These lands were old burying grounds of which the plaintiff over twenty years ago received deeds of the fee from the original proprietors, and which it has been since engaged in clearing up by getting in the burial rights, generally by giving to the owners of such rights lots of equal size in its own grounds, and in some few instances by purchase of such rights, and, at its own expense, removing the gravestones, &c., to the lots given in exchange, and in some cases to lots in other cemeteries, with a view, eventually, when the grounds are so cleared as to be in condition to put into the market, of reimbursing itself, by their sale, for the lands in its cemetery thus given in exchange, and for the expense thus incurred, and thus adding to its funds for the support of its cemetery.

" The original Swan Point Cemetery Company was a stock company, incorporated at the May session, 1847, of the General Assembly, and the present plaintiff corporation was created at the May session, 1858, and succeeded and took conveyances of all the estate, property, and stock of the old corporation, as authorized by the second section of the present charter."

The plaintiff sued to recover the assessments paid, claiming an exemption from them under section three of its charter.    This section is recited in the opinion of the court.

*June* 30, 1883.    DURFEE, C. J.    Two questions are raised in this case.    The first is : Is the plaintiff corporation exempt from taxation for such of its real estate as is not a part of its cemetery at Swan Point.    The corporation claims that its entire property, real as well as personal, is exempt under section three of its charter, which follows, to wit :

" The real estate held by this corporation at their cemetery, for cemetery purposes, shall not exceed two hundred acres of land ; and all the property of this corporation, and the lots and parcels of land in their cemetery that have been heretofore conveyed by said Swan Point Cemetery Company, or that may be hereafter conveyed by this corporation, shall be forever exempt from all taxes and assessments, and shall not be liable to attachment, or to be taken or sold on execution, nor shall the same pass by, or

be applied to, the payment of debts under any assignment for the benefit of creditors, or under any bankrupt or insolvent law ; no assessment shall be made upon said lot owners for the support or improvement of the cemetery."

It will be seen that the exemption here is two fold: *first,* it extends to " all the property of the corporation ; " and, *second,* to " the lots and parcels of land in their cemetery " which either have been or may be sold.  The exemption designated under the second specification is limited to " lots or parcels " in the cemetery, and was doubtless intended to protect them for burial purposes from all claims whatever, either state or individual, against their owners.  The other exemption, the exemption in favor of the corporation, is in terms unlimited, and extends to its entire property. It, therefore, includes real estate belonging to the corporation which is not a part of its cemetery at Swan Point.  The defendant directs our attention to the opening words of section three : " The real estate held by this corporation at their cemetery, for cemetery purposes, shall not exceed two hundred acres," and argues from them that the corporation is not entitled to hold real estate elsewhere than at the cemetery, nor for other than cemetery purposes, and that even at the cemetery it is not entitled to hold more than two hundred acres.   We do not think the words are capable of so broad a meaning.   Taken literally, the meaning is simply that the real estate held at the cemetery, for cemetery purposes, shall not exceed two hundred acres, and we can see no reason why the literal should not be accepted as the true meaning of the words.   The corporation was chartered " for the purpose of maintaining, improving, and embellishing the said cemetery grounds, and the appurtenances thereof," and was invested by its charter " with all the powers and privileges granted in and by chapter one hundred and twenty five of the Revised Statutes."   Among the powers and privileges granted by cap. 125 is the power of " taking, holding, transmitting, and conveying property, real or personal."   The power is doubtless subject to an implied limitation that any real estate acquired or held under it shall be acquired and held only for the proper objects of the corporation, or for purposes which are incidental or auxiliary thereto.   It would not do for the corporation under its charter to

engage in the. business of buying and selling real estate, as a mere matter of speculation.    If, therefore, the real estate here in question was taken and held by the plaintiff corporation for its corporate objects, or for some purpose or purposes which are simply incidental or auxiliary thereto, we see no reason why it should not be deemed to have been properly taken and held, nor why it should not enjoy the exemption, granted by section three, to " all the property of the corporation."    The real estate in question was an old burying ground, and we are of the opinion that the statement of facts shows that the corporation, in purchasing it and in holding it hitherto, has done so for objects which are within the proper scope of the purposes for which it was incorporated.

The second question is, whether, even if the real estate here in question was legally acquired and held, and was, therefore, entitled to the same immunity from taxation or assessment as any other property of the corporation, it was not, nevertheless, liable to assessment for a sewer constructed in a street on which it abuts. The defendant contends that the exemption conferred by section three does not extend to a sewer assessment: *first*, because the words " taxes and assessments must be held to have meant only such taxes and assessments as had previously existed; and, *second*, because such an assessment, unlike an ordinary tax which is levied for public purposes, is imposed as pay for benefits specially conferred by the building of such sewer in the enhancement of the value of the estate assessed.    In support of the first point the defendant cites the case of *Love et ux.* v. *Howard*, 6 R. I. 116. This was an action by a landlord against tenant on the latter's covenant, entered into January 1, 1847, to " pay all taxes and assessments."    The court held that the covenant did not cover an assessment for benefit accruing to the demised estate by the laying out of a new street in the city of Providence under the local act of 1854.    The ground of the decision was that no tax or assessment " of the same kind or nature " was before known or in use in the State.    The case is in point if, when the plaintiff's charter was granted, no assessment of the " same kind or nature " as a sewer assessment was known in.the State.    We do not think this can be maintained ; for, in our opinion, street assessments and sewer assessments are of the same kind and nature, both being assessments

for benefits resulting from public improvements, and street assessments were well known before the charter was granted. In support of the second point the defendant cites *In re College Street*, 8 R. I. 474, 483. In that case the court held that a person or corporation exempt from taxation by charter or statute is nevertheless liable for a street assessment, because, though technically speaking a street assessment is a tax, the word taxation or tax, as ordinarily used, extends only to exactions for the public service, and does not include assessments to pay for benefits specially accruing to the persons assessed. The case would be in point if here the exemption were simply an exemption from "taxation" or "taxes." The exemption here is an exemption from "all taxes *and assessments.*" When the charter was granted the word "assessment" had already come into use as the word by which assessments for benefit under the local act of 1854 were designated. It is, therefore, fair to suppose that the word was inserted, not as a mere tautological term, but as the proper word for the designation of these and similar assessments. And see *Beals* v. *Providence Rubber Company*, 11 R. I. 381, 384. In *State, Protestant Foster Home Society, Pros.* v. *Mayor &c. of Newark*, 36 N. J. Law, 478, and in *First Div. St. Paul & Pacific Railroad Company* v. *City of St. Paul*, 21 Minn. 526, it was decided that an exemption from "taxes and assessments" extends to assessments for street or local improvements. So a covenant to pay "taxes and assessments," contained in a lease, has been held to cover an assessment for benefit. *Codman* v. *Johnson*, 104 Mass. 491. See, also, *Curtis* v. *Pierce*, 115 Mass. 186, and *Blake* v. *Baker*, 115 Mass. 188. We think, therefore, that the case at bar is not governed by the cases cited for the defendant, but must be decided in the light of other cases as well, and on its own merits. It seems to us that the language of section three of the plaintiff's charter was intended to be broadly interpreted. We have seen that the same exemption which protects the property of the corporation, also protects the lots where the dead sleep in their graves, and it is scarcely imaginable that these burial lots were not intended to be withdrawn from every possible form of taxation and assessment. The strong point in the defendant's argument is, that if the exemption is allowed, the plaintiff's estate gets a benefit *gratis*, such as other es-

tates similarly situated have to pay for. This is doubtless true to some extent, though perhaps not absolutely so; for under the statute, unless we go beyond the letter, it is only the abuttors who are assessed who are authorized to connect with the sewer. But, however that may be, we feel the force of the defendant's argument; but, nevertheless, we do not see how we can yield to it without rather modifying than simply interpreting the charter.

*Judgment for plaintiff.*

*Tillinghast & Ely*, for plaintiff.

*Nicholas Van Slyck*, City Solicitor, for defendant.